**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

United States of America,                                    Case No. 18-cr-00476

    Plaintiff-Respondent,

    v.                                                      **ORDER**

Terrance Allen,

    Defendant-Movant.

Petitioner, Terrance Allen who is in federal custody, seeks to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255. (Doc. 424). Petitioner Allen is serving a sentence of 390 months, which I imposed following his pleas of guilty to one charge of conspiracy to possess with intent to distribute and distribution of controlled substances, four counts of distribution of controlled substances, two counts of possession with intent to distribute controlled substances, one count of felon in possession of a firearm, and one count of possession of a firearm in furtherance of a drug trafficking scheme. (Doc. 372, PgID. 3310–11).

Petitioner, initially proceeding *pro se*, filed his § 2255 motion on October 30, 2023. (Doc. 424). The Government responded (Doc. 427). Then, while still proceeding *pro se*, Petitioner filed a motion for leave to supplement, which I granted (Doc. 434 (motion to supplement); *and see* Text Only Docket Order dated 3/1/2024). The Government filed an opposition to Petitioner's supplement (Doc. 436), which *pro se* Petitioner then opposed (Doc. 441).

On April 29, 2024, I appointed counsel John Thebes for Petitioner, and permitted him to file a supplemental § 2255 motion or a reply through counsel. (*See* Text-Only Order dated 4/29/2024; *and see* Minutes of Status Conference Proceedings [non-document] Text Only Order dated

5/6/2024). Petitioner's counsel did so (Doc. 445), and the Government responded in opposition

(Doc. 450).

For the reasons discussed below, I deny the Petition for § 2255 relief.

## Background

The Government, in response to Petitioner's § 2255 motion, accurately summarizes the factual

background underlying Petitioner's convictions, stating:

> Beginning as early as 2014, Allen joined a drug trafficking conspiracy, which he led, in Toledo, Ohio. (R. 297: PSR, PgID. 2167; *see also* R. 385: Sentencing Trans., PgID. 3376). In late 2017, investigators learned that Allen's organization was selling large amounts of heroin and later fentanyl. (R. 297: PSR, PgID. 2167). From January through August 2018, investigators made controlled buys of heroin and fentanyl from numerous conspiracy members, including four controlled buys of fentanyl from Allen. (*Id*., PgID. 2169).

> Through court-authorized Title-III wiretap interceptions, beginning on June 14, 2018, investigators also learned that several conspirators, including Allen, took turns operating the organization's "dope phone" to further their drug trafficking activities. (*Id*., PgID. 2169, 2181).

> Allen, who other conspirators referred to as "the boss," used the "dope phone" for 8 of the 51-day interception period to ensure the drug operations went smoothly. (*Id*., PgID. 2169, 2171, 2181, 2198).

> Allen used his residences, which he shared with his children and their mothers, for the purpose of manufacturing or distributing drugs, including fentanyl. (*Id*., PgID. 2172, 2199). In fact, Allen agreed under oath, (R. 384: Plea Trans., PgID. 3348-49), that on August 23, 2018, when investigators executed search warrants at three of his residences, (R. 297: PSR, PgID. 2170), he "possessed at his residence located on Hazelhurst Avenue [] in Toledo, Ohio, approximately 209 grams of Fentanyl, which was possessed with the intent to distribute, approximately $15,383 in U.S. currency, . . . [a] Smith & Wesson[,] model M&P 15, 223 caliber rifle . . .; and various other items of ammunition." (R. 384: Plea Trans., PgID. 3369). At the second searched residence, located on Eastway Street in Toledo, investigators found multiple jars of Benefiber—a substance that drug traffickers use to cut fentanyl—and a scale. (R. 297: PSR, PgID. 2170; see also R. 385: Sentencing Trans., PgID. 3389). Allen also admitted that he possessed a Springfield Armory, Model XD45, 45 caliber pistol and ammunition at the third residence searched,

located on Frankfort Road in Holland, Ohio. (R. 384: Plea Trans., PgID. 3370; see also R. 297: PSR, PgID. 2170).

After initially being charged on August 22, 2018, a superseding indictment was filed on March 6, 2019, charging Allen and several others with conspiring to possess with intent to distribute and to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count 1). (R. 119: Superseding Indictment, PgID. 392-94). Allen also was charged with four counts of distributing fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Counts 7, 12, 16, 17); two counts of possessing with intent to distribute fentanyl, in violation of §§ 841(a)(1) and (b)(1)(B) (Count 29) and (b)(1)(C) (Count 30); being a felon possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 32); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 33). (*Id*., PgID. 394-99). Allen pled guilty as charged on December 10, 2019. (R. 384: Plea Trans., PgID. 3371). He did so without a plea agreement.

(Doc. 427, PgID. 3716–18).

The Sixth Circuit, in describing Petitioner's case on direct appeal, stated:

On December 10, 2019, Allen pleaded guilty to nine counts, including: conspiracy to possess with intent to distribute and to distribute heroin and fentanyl (21 U.S.C. § 846); knowing and intentional distribution of fentanyl in various quantities (21 U.S.C. § 841(a)(1), (b)(1)(C)); knowing possession of a firearm while having previously been convicted of a felony crime (18 U.S.C. § 922(g)(1)); and knowing possession of a firearm in furtherance of drug trafficking (18 U.S.C. § 924(c)(1)(A)). Based on Allen's calculated offense level (41) and criminal history category (VI), the Presentence Investigation Report (PSR) recommended a Guidelines range of 360 months to life, with all but the Section 924(c) count to be served concurrently, and 60 additional, consecutive months for the 924(c) count.

Allen objected to the PSR's recommendation on several grounds relevant to this appeal. First, he objected to the two-point sentencing enhancement for maintaining a premise for the purpose of manufacturing or distributing a controlled substance, arguing that the primary purpose of the two residences to which the enhancement applied was to house Allen's children and their mothers. Second, Allen argued that the four-point enhancement for knowingly misrepresenting or knowingly marketing a mixture or substance containing fentanyl as another substance should not apply because he did not know that the drugs he and others were selling contained fentanyl. Third, he objected to being assessed criminal history points for five prior assaults that took place while he was incarcerated on the basis that he did not serve a period of incarceration for those convictions. And fourth, Allen argued

3

that a downward departure from the Guidelines was warranted because of the "exceptional" extent of his drug and alcohol use from an early age.

Allen reiterated these objections at sentencing. He also emphasized that the five assault convictions in the record overstated his criminal background and likelihood to re-offend because assaults in a jail setting are qualitatively different than assaulting someone in public. Given the inherent tensions of the jail environment, and the fact that he was defending himself, Allen argued that a departure or variance from the Guidelines was warranted. The sentencing court overruled this and every other objection.

Ultimately, the district court accepted the PSR's recommendation as to Allen's offense level and criminal history category. After considering the Section 3553(a) factors, Allen's prior conduct, and his testimony, the court varied downward from the Guidelines recommendation of 360 months by 30 months as to his drug-related charges. In combination with the mandatory 60-month Section 924(c) sentence, the total sentence imposed was 390 months. Allen timely appealed, renewing his objections as to the procedural and substantive reasonableness of his sentence.

*United States v. Allen*, No. 21-3900, 2022 WL 7980905, *1 (6th Cir. Oct. 14, 2022).

Petitioner did not file a certiorari petition in the United States Supreme Court. (Doc. 424, PgID. 3685).

## Legal Standard

Under 28 U.S.C. § 2255, a Petitioner may move to reduce or vacate his prison sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in the excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" Thus, "[t]o prevail under section 2255, [Petitioner] must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

"A petitioner seeking to vacate [or reduce] a sentence pursuant to § 2255 has the burden of sustaining his contentions by a preponderance of the evidence." *McNeil v. United States*, 72 F. Supp. 2d 801, 804 (N.D. Ohio 1999) (Economus, J.) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). "The Supreme Court consistently has determined that 'to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)). An evidentiary hearing on the petition is not required if "the record conclusively shows that the petitioner is entitled to no relief." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

## Discussion

As noted above, Petitioner filed his original § 2255 motion *pro se*.

In it, he raised three arguments. First, he argued that his counsel was ineffective during sentencing and during the direct appeal process. (Doc. 424, PgID. 3686). Second, he argued that his counsel was ineffective "due to both the individual and cumulative impact of multiple deficiencies or errors by counsel during the pretrial, plea, sentencing, and direct appeal process." (*Id*. at PgID. 3687). Third, he argued that his "conviction and sentence are violative of the First, Second, Fourth, Fifth, Sixth, and Eighth Amendments to the [C]onstitution." (*Id*. at PgID. 3688).

In his March 1, 2024 *pro se* supplement, Petitioner added an additional ground to his ineffective assistance of counsel arguments, namely, "[f]ailure to contest the misapplication of Criminal History points assessed to the Petitioner as it relates to Class (B) Misdemeanor Assaults and Obstruction of Official Business Offenses." (Doc. 434, PgID. 3755).

The Government opposed Petitioner's supplement on both timeliness grounds and on the merits. (Doc. 436).

Then, I specifically directed appointed counsel to address Petitioner's contention that there was no probable cause for the Eastway residence search warrant. (*See* Minutes of Status Conference Dated 5/6/2024).

After briefing closed, Petitioner sent a letter to the Clerk of the Court indicating that he was dissatisfied with his appointed counsel's arguments in the supplemental brief. (Letter to Court Clerk received 7/18/2024).

I address each issue in turn.

### 1.  Petitioner's First *Pro Se* § 2255 Argument: *Ex Post Facto* Issue

Petitioner's first argument in his *pro se* § 2255 motion is that his counsel was ineffective for failing to raise an *ex post facto* challenge to the application of his four-level sentencing enhancement under U.S.S.G. §2D.1(b)(13). (Doc. 424, PgID. 3694–96).

In Petitioner's counselled supplemental petition (Doc. 445, PgID. 3793–96), he acknowledged that, with regard to this *ex post facto* issue, my application of the enhancement was a harmless error. (*Id*. at PgID. 3794).

Since Petitioner concedes this issue, I deny this ground for relief as moot.

However, because Petitioner later indicated in his letter to the Clerk that he was dissatisfied with his counsel's position on this issue, I address the merits.

On consideration of the merits, I confirm that the error, if any, was harmless.

Guideline § 2D1.1(b)(13) enhances a defendant's Offense Level by four "if the defendant knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl […] or a fentanyl analogue." U.S.S.G. § 2D.1(b)(13).

Petitioner's superseding indictment charged that the conspiracy began in or around 2014 and continued through August 23, 2018. (Doc. 427, PgID. 3723). Guideline § 2D1.1(b)(13), however, was added effective November 1, 2018, which is nine weeks after Petitioner's offense terminated. (*Id.*). Because my application of the Guideline at sentencing created a harsher punishment than it would have without the guideline, I should not have applied it. (*Id.*).

Despite this, I agree with the Government that my error at sentencing—and counsel's failure to assert such violation during that proceeding—was harmless. Petitioner was not prejudiced by my application of Guideline § 2D1.1(b)(13).

This is so because once one takes away the four-level enhancement, Petitioner's guideline range remains the same: 360 months-to-life imprisonment (plus the additional consecutive sixty-month term).

In other words, when I subtract the wrongly-included knowing misrepresentation points from the sentencing base offense level, then the base offense level, as corrected, is thirty-seven. The Guideline Range—360 months to life imprisonment, plus the mandatory consecutive sixty months—result is the same as the range I applied at sentencing.

Finally, I varied below the Guideline range at sentencing, which further renders this *ex post facto* error harmless. *See United States v. McCarty*, 628 F.3d 284, 294 (6th Cir. 2010).

In sum, Petitioner's *ex post facto* claim has merit but the error is harmless. My oversight at sentencing, and the Sixth Circuit's oversight of this issue on appeal, had no effect on the ultimate

Guideline Range. *See United States v. Charles*, 138 F. 3d 257, 268 (6th Cir. 1998); *see also United States v. Dyer*, 478 F. App'x 308, 309 (6th Cir. 2012).

I accordingly deny Petitioner's first ground for relief in his *pro se* Petition.

### 2. Petitioner's Second § 2255 Arguments: Counsel's Cumulative Errors

Second, Petitioner argued that his counsel was ineffective "due to both the individual and cumulative impact of multiple deficiencies or errors by counsel during the pretrial, plea, sentencing, and direct appeal process." (Doc. 424, PgID. 3687).

Petitioner's statement attached to his *pro se* Petition sets forth two arguments as to these grounds.  (*See id*. at PgID. 3690–701). First, he argued that his counsel improperly failed to move to suppress evidence seized from 4612 Eastway Street, Toledo, Ohio, 43612 (the "Eastway residence"); Second, he argued that his counsel improperly failed to challenge the constitutionality of Petitioner's § 924(c)(1)(A) count. (Doc. 424, PgID. 3694–96).

I reject both arguments for the reasons that follow.

### a. Motion to Suppress

I find no violation of the Petitioner's right to effective assistance of counsel *vis-à-vis* his attorney's failure to move to suppress the evidence seized pursuant to a search warrant for the Eastway residence.

The Government argued that Petitioner did not show the basis on which suppression might have been possible. (Doc. 427, PgID. 3726). I agree. No attorney failed in his or her duty to provide constitutionally adequate assistance. And the Petitioner suffered no prejudice from their collective failure to file a motion to suppress.

Nonetheless, given the importance of the items that the government recovered from the search of the Eastway residence, I have reviewed the affidavit for the warrant that resulted in the seizure of those inculpatory items. (*See* No. 18-mj-05270 \*SEALED\* PgID. 2–24).

The principal dispute that the Defendant's attorney could have raised with regard to the affidavit is Petitioner's connection with those premises. My review shows that there were several indicia of the Petitioner's contacts with the Eastway residence.

First, a black Chevrolet Tahoe and a red Dodge Durango were registered to Juanita Ellis at the Eastway residence address. Ms. Ellis is the mother of Petitioner's children.

Further, on July 2, 2018, officers saw Petitioner exit the Eastway residence and enter the black Tahoe. On July 18, Officers saw Petitioner meeting with co-defendant, Donte Walker, in the driveway of the Eastway residence. They went to the front door of the Eastway residence, which Petitioner opened with a key.

Pursuant to a July 27, 2018 GPS Order, officers installed a GPS unit in the black Tahoe. Officers tracked the movements of the vehicle for about two weeks, until August 9, 2018. The vehicle was parked outside the Eastway residence from July 27 to July 30, 2018, when Petitioner was believed to be out of town. On August 7, 2018, the vehicle was found with multiple bullet holes in it. Ms. Ellis told police that Petitioner had been driving the vehicle during that time.

Officers saw Petitioner using both the Tahoe and Durango throughout the investigation. During that period, Petitioner was involved, as Officers determined through court-ordered electronic surveillance, in various drug transactions. Some of these transactions included hand-to-hand buys with confidential sources.

9

For example, on August 6, 2018, an individual known as "Confidential Source 3" made a controlled buy of one gram of heroin from Petitioner and Walker at L.A. Fitness on N. Holland in Sylvania, Ohio. At that time, officers saw the red Durango in the L.A. Fitness parking lot.

GPS surveillance located the Tahoe "in the area" of the Eastway residence on approximately eighty-five occasions.

Court-ordered GPS surveillance from March 28 through August 13, 2018 of a tan Buick Century associated with Walker, showed that it was in the area of the Eastway residence on over three hundred occasions. Officers conducted an unstated number of controlled buys from the Buick during that period.

To be sure, "in the area of" is vague and left without further elaboration of definition.

Nonetheless, my independent review of the affidavit that supported issuance of the challenged warrant fully justified the finding of probable cause. Probable cause "is not a high bar." *Fisher v. Jordan*, 91 F.4th 419, 425 (6th Cir. 2024). It is "more than reasonable suspicion but less than a preponderance of the evidence—and far less than guilt beyond a reasonable doubt." *Id*.

The issuing judge properly could—and, as he did—find probable cause to believe that: (1) Petitioner lived at the Eastway residence; (2) Petitioner used those premises as a place where he kept items sought and ultimately found there; and (3) Petitioner maintained those premises, at least in part, for the purpose of engaging in drug transactions with his confederate Walker.

I find that there was more than ample probable cause for the warrant as it relates to the Eastway residence.

In sum, I am firmly convinced that the affidavit set forth ample probable cause to support the Eastway residence search warrant.

10

There is, accordingly, no merit to Petitioner's come-lately claim that his counsel inadequately represented him when he decided not to file a motion to suppress.

Thus, Petitioner's counsel was not ineffective for failing to file a futile motion to suppress.

As discussed, I appointed attorney Thebes to represent Petitioner and directed him to specifically address this contention.

Petitioner's counselled supplement stated that Petitioner erred in his initial § 2255 brief by identifying the Eastway residence. (Doc. 445, PgID. 3794). Rather, Petitioner intended this argument to apply to the search of 3534 Hazelhurst Ave., Toledo, Ohio 43612 (the "Hazelhurst residence"). (*Id.*).

Accordingly, I have read the affidavit as it relates to the Hazelhurst residence. I conclude that a motion to suppress would have been unsuccessful because the affidavit showed sufficient probable cause to justify issuance of the warrant for those premises.

For example, the affidavit states that the above-described Tahoe made eight stops at the Hazelhurst residence during the time of July 27, 2018 to August 9, 2018.

GPS surveillance of the Tahoe demonstrated that the Tahoe arrived at the Hazelhurst residence on July 31, 2018 at 3:43 am and remained there for approximately six hours.

On August 14, 2018, an individual identified as "Confidential Source 2" made a controlled buy in an HHR vehicle parked just outside the Hazelhurst residence. The HHR was affiliated with Petitioner's co-defendant Nathanial Barringer, who was present during the buy. Following the buy, surveillance saw Petitioner arrive at the Hazelhurst residence, check the mailbox, and enter the residence.

GPS surveillance of another vehicle, a Buick that was involved in several controlled buys and hand-to-hand drug transactions, showed the Buick present at the Hazelhurst residence thirty-four times between March 28, 2018 and August 13, 2018.

During surveillance of the Hazelhurst residence on August 20, 2018, Petitioner left, using the front door of the residence, and walked to the back of the property. Law enforcement observed Petitioner enter a vehicle registered to EAN Holdings, drive to Family Dollar, and then drive to the Eastway residence.

Accordingly, I find that the affidavit that supported issuance of the challenged warrant fully justified the finding of probable cause to search the Hazelhurst residence. The issuing judge properly found probable cause to believe that Petitioner (and others) used those premises in their possession and distribution of narcotics.

In any event, even if that were not so, both the Eastway and the Hazelhurst searches would be protected by the good faith doctrine. *See United States v. Leon* 468 U.S. 897, 913 (1984) ("our evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief").

The good faith doctrine protects the admission of otherwise unlawfully obtained evidence except in certain circumstances, *i.e.*, when the affidavit supporting the warrant is misleading and knowingly false, where the judge issuing the warrant is acting as a mere "rubber stamp" for police, where the affidavit is "bare boned" or unreasonably lacking in facts that could lead to a finding of probable cause, and where an officer's reliance on the affidavit is objectively unreasonable. *See United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007).

Here, none of these circumstances is present. Moreover, reasonable and experienced law enforcement officers would have no reason to believe that the affidavit failed to show probable cause.

Accordingly, I reject Petitioner's argument that counsel was ineffective for failing to object to the sufficiency of the warrant as it relates to the Hazelhurst residence.

### b.  Section 924(c)(1)(A)

Petitioner's next argument in his second grounds for relief is that his counsel was ineffective for failing to challenge the constitutionality of 18 U.S.C. § 924(c)(1)(A). Count 33 of Petitioner's indictment charged him with knowingly possessing a firearm "in furtherance of a drug trafficking crime." (*See* Doc. 119, PgID. 399).

Petitioner's *pro se* argument on this point is not entirely clear. Nonetheless, from what I can tell, Petitioner argues that his counsel is ineffective for failing to object to this code section because the phrase "in furtherance of" is unconstitutionally vague.

The Government's position is that this claim lacks clarity and I should deny it. I agree. (*Id*. at PgID. 3727).

Even under a liberal interpretation of Petitioner's argument his contention has no merit. At his plea hearing, Petitioner admitted that he knowingly possessed a Smith & Wesson, Model M & P 15, 223 caliber rifle bearing serial number 00133 "in furtherance of [a] federal drug trafficking crime." (Doc. 384, PgID. 3370). And Petitioner confirmed under oath that he was satisfied with his counsel's performance. (*Id*. at PgID. 3352–53). Thus, Petitioner's counsel was not ineffective for failing to object to the statute's constitutionality.

I therefore deny this ground for relief.

### 3. Petitioner's Third *Pro Se* § 2255 Argument: Non-Specific Constitutional Violations

I deny Petitioner's third ground for relief.

In support of his third ground, Petitioner simply stated:

> Mr. Allen's conviction and sentence are violative of his right to freedom of speech and to keep and bear arms and to petition, his right to be free of unreasonable search and seizure, his right to due process of law, his rights to counsel, to jury trial, to confrontation of witnesses, to present a defense, and to compulsory process, and his right to be free of cruel and unusual punishment under the constitution.

(*Id*. at PgID. 3688).

The Government opposition correctly observed that neither the facts nor the law support Petitioner's third ground. (Doc. 427, PgID. 3729).

The Sixth Circuit has held, in *United States v. Robinson*, that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," and that "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." 390 F.3d 853, 886 (6th Cir. 2004) (citation omitted).

Here, Petitioner fails to state how and why his conviction and sentence violate the multiple constitutional rights that he lists. He merely concludes that his rights were violated with no further argument or support.

Moreover, as the Government pointed out (Doc. 427 PgID. 3720), Petitioner cannot be heard here to make these claims. This is so, because he failed to have them raised before conclusion of the proceedings resulting in the conviction and sentence he now challenges under § 2255.

I deny Petitioner's third ground for relief because he provided insufficient detail for me to identify the issues in dispute.

### 4.  Petitioner's *Pro Se* Supplemental Brief: Criminal History Points

Petitioner's *pro se* supplemental brief argued that his counsel was ineffective because his counsel "[f]ail[ed] to contest the misapplication of Criminal History points assessed to the Petitioner as it relates to Class (B) Misdemeanor Assaults and Obstruction of Official Business Offenses." (Doc. 434, PgID. 3755).

Put simply, Petitioner argued that his counsel did not, but should have, objected to the total criminal history points (totaling eighteen) in his Presentence Report. Petitioner is mistaken. His counsel did object—twice.

First, Petitioner's counsel objected in writing. (Doc. 297 *SEALED*). The United States Probation Officer responded in writing. (*Id*.).

Petitioner's counsel raised the same objection at the sentencing hearing. (R. 385: Sentencing Trans., PgID. 3420–29). I overruled the objection. (*Id*.).

Moreover, I as discussed earlier, I varied Petitioner's sentence downward by thirty months. Therefore, there is no prejudice to Petitioner in any event.

Petitioner's *pro se* supplement asserts a challenge to his criminal history calculation. (Doc. 434-1, PgID. 3756–58). I reject this argument for two reasons.

First, the Sixth Circuit rejected this contention on direct appeal. *See Allen*, *supra*, 2022 WL 7980905.

That is the law of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Second, he cannot assert this already-rejected claim under the cloak of "ineffective assistance," for the reasons stated in the Government's brief. (*See* Doc. 436, PgID. 3766–67 ("Simply because a challenge was unsuccessful does not render counsel's assistance ineffective.")).

I accordingly deny Petitioner's additional claim in his *pro se* supplement.

### 5.   Petitioner's Discharge of Appointed Post-Conviction Counsel

As mentioned above, on July 18, 2024, I received a letter Petitioner mailed to the Clerk's office. In the letter, Petitioner contended that his appointed counsel failed to provide adequate assistance of counsel in various respects.

I interpret Petitioner's complaints as a demand that I discharge Mr. Thebes. I do so now. The Clerk is directed to remove Mr. Thebes' appointment to this case.

I decline to address the contentions Petitioner makes against his now-former counsel. I have encompassed his contentions in my foregoing analysis.

Petitioner also asks that I appoint successor counsel. There is no right to counsel in § 2255 proceedings. *See Garza v. Idaho*, 586 U.S. 232, 246 (2019). Congress, in 18 U.S.C. § 3006A(a)(2), (a)(2)(B), has left appointment of counsel in § 2255 cases entirely in my discretion. *United States v. Augustin*, 16 F.4th 227, 233 (2021).

The issue I appointed Mr. Thebes to address is now moot and there are no context-specific issues that would persuade me that justice so requires I appoint yet another attorney for Mr. Allen. *Id.* (citing *Martel v. Clair*, 565 U.S. 648, 663 (2012)).

16

**6.  Other Claims for Relief**

Finally, Petitioner's original *pro se* Petition concluded with a list of claims that I now deny.

Specifically, Petitioner claims entitlement to discovery under Rule 6 of the Rules governing these proceedings. Because I deny all of his claims, I deny the request as moot.

Moreover, there is no merit to this demand.

The record clearly shows that Petitioner's attorneys in the earlier proceedings obtained and conducted discovery far beyond the limits of either Rule 6 or Fed. R. Crim. P. 16. During his plea colloquy with me, Petitioner admitted that his attorneys had shared with him what they had learned as a result of the government's "open file" opportunity for them to learn as much about the government's case as the prosecutor. (Doc. 384, PgID. 3352–53). *See Krause v. Rhodes*, 535 F. Supp. 338, 348 (N.D. Ohio 1979) (in which the late district judge William K. Thomas explained the "open file" discovery policy).

There is, therefore, no merit to this request.

## Conclusion

In sum: for the reasons the Government set forth in its opposition brief and the reasons I discuss above, I find no merit, whatsoever, in the Petitioner's original petition, supplemental petition, or counselled supplement.

That being so, I also decline to grant a Certificate of Appealability, as jurists of reason could not rationally doubt the outcome of this proceeding or its rationale.

In light of the foregoing, it is hereby, ORDERED THAT:

1.  Petitioner's Petition (Doc. 424), supplemental petition (Doc. 434-1), and his counselled petition (Doc. 445) under 28 U.S.C. § 2255 be, and the same hereby is, denied;

2.  The Clerk of the Court is directed to remove Mr. Thebes, as counsel for Petitioner, from

    the case; and

3.  I deny Petitioner a Certificate of Appealability.

SO ORDERED.

/s/James G. Carr
Sr. U.S. District Judge

Dated: October 4, 2024